[No. 17958.    Department One.    July 24, 1923.]

CAMAS PRAIRIE RAILROAD COMPANY *et al., Appellants,* v.
THE DEPARTMENT OF PUBLIC WORKS *et al.,*
*Respondents.*[1]

CARRIERS (3-1, 6)—REGULATION—LIVE STOCK SHIPMENTS—TRANSPORTATION OF CARETAKERS—INTERSTATE COMMERCE—DISCRIMINATION. An order of the department of public works requiring intrastate carriers of live stock to furnish free transportation and one-half return fare, for caretakers of each single car shipment, discriminates against interstate commerce and is void, as conflicting with the interstate commerce rule allowing a caretaker of single car shipments free transportation one way, and both ways only in case of shipments of two or more cars for every five or six cars.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered February 20, 1923, affirming an order of the department of public works, after a hearing upon a writ of review. Reversed.

*Geo. T. Reid, C. H. Winders,* and *L. B. daPonte,* for appellants.

*The Attorney General* and *Raymond W. Clifford, Assistant,* for respondent Department of Public Works.

*Arthur M. Geary,* for respondent Northwestern Livestock Shippers Traffic League.

HOLCOMB, J.—Upon a petition filed before it by the Northwestern Livestock Shippers Traffic League, a voluntary association, the department of public works

[1]Reported in 217 Pac. 33.

made findings and an order requiring common carriers of live stock within this state to make tariff provision for free transportation from the point of origin to destination, and one-half fare return transportation from point of destination to point of origin to accompanying caretaker, limited to one caretaker for each single carload shipment. Among other things, the department found that, prior to Federal control (December 28, 1917, to February 29, 1920), it was the practice of carriers to furnish free transportation for caretakers from point of origin to destination, and one-half return fare on single carload shipments of live stock throughout the territory of Oregon, Idaho and Washington, both upon interstate and intrastate shipments; that, at the present time, free transportation both ways between the point of origin and destination is granted to caretakers with two or more cars of live stock, and that the provisions of the Washington law do not afford to the commodity moving intrastate a protection with regard to unloading for rest, feeding and water equal to that afforded by the Federal law on movements interstate, and that such a provision as this would tend to relieve the burden upon the Washington producer and shipper and encourage such small shipments.

The proceeding was removed by the carriers to the superior court on writ of review, upon the alleged grounds that the findings of the department are contrary to the law and the evidence, without jurisdiction, create an unlawful discrimination in favor of intrastate commerce and against interstate commerce, and in contravention of the due process clause of the Federal and state constitutions. The superior court held with the department, affirming its order. This appeal results.

As to the matter to be determined, we are indifferent to several contentions made here by appellants.

We believe that the department has power and jurisdiction under the statutes, §§ 10345, 10389 and 10427, Rem. Comp. Stat. [P. C. §§ 5536, 5580, 5612], being portions of the public service commission law, if the state law alone controls, to make orders relating to transportation of caretakers accompanying shipments of fruit or live stock, as part of its powers. We are also convinced that the order was based upon sufficient evidence that it would be to the advantage of both shipper and carrier to adopt such regulation. We are not convinced that the order is in contravention of the due process clauses of the Federal and state constitutions.

But we are convinced that there is here a conflict between intrastate and interstate jurisdiction. If that be the case, even though the order be reasonable as applying within the state of Washington, if it conflicts with or accomplishes discrimination against interstate commerce it is void.

It is contended by respondents that such regulations which are concomitant to rates, or the regulating power, should be based upon the prevailing rule applying in the territory where the regulations are sought to be made, and that such was the prevailing rule in this region prior to Federal control, during which it was abolished.

The United States supreme court, in *Houston E. & W. T. R. Co. v. United States,* 234 U. S. 342, made, among other things, the following definite and positive holdings; quoting from the syllabi:

"The object of the commerce clause was to prevent interstate trade from being destroyed or impeded by the rivalries of local governments; and it is the essence

of the complete and paramount power confided to Congress to regulate interstate commerce that wherever it exists it dominates.

"Wherever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the state, that is entitled to prescribe the final and dominant rule; otherwise the Nation would not be supreme within the national field.

"The use by the state of an instrument of interstate commerce in a discriminatory manner so as to inflict injury on any part of that commerce is a ground for Federal intervention; nor can a State authorize a carrier to do that which Congress may forbid and has forbidden.

"In removing injurious discriminations against interstate traffic arising from the relation of intrastate to interstate rates Congress is not bound to reduce the latter to the level of the former.

"Congress having the power to control intrastate charges of an interstate carrier to the extent necessary to prevent injurious discrimination against interstate commerce may provide for its execution through the aid of a subordinate body."

The interstate commerce commission had before it in *Dimmitt-Caudle-Smith etc. Co. v. Chicago, Burlington & Q. R. Co.*, 47 I. C. C. 287, the question of the rule governing the return transportation of caretakers in connection with intrastate rates to St. Louis, Missouri, and interstate rates to East St. Louis and National Stock Yards, Illinois, and found that the application of a different rule governing the same constituted undue prejudice and disadvantage to interstate commerce.

In that case the state commission of Missouri asserted that the free transportation of caretakers was in no way aligned or connected with rates; that the interstate commerce commission had no power under the

act to regulate commerce or relieve the carriers from the burdens imposed upon them by law with reference to live stock; and if the commission saw fit to remove this discrimination, they could not relieve the carriers from liability if they saw fit to remove it by prohibiting it in Missouri. It was insisted that such procedure would be interfering with a right which belonged wholly to the state of Missouri in so far as local transportation was concerned. These contentions were overruled. Section 3 of the interstate commerce act was quoted to the effect that it was "unlawful for any interstate common carrier to make or give any undue or unreasonable provisions or advantages to any particular person, company, firm, corporation or locality, or any particular description of traffic, *in any respect whatsoever,* or to subject any particular person, company" etc., "to any undue or unreasonable prejudice or disadvantage *in any respect whatsoever.*"

The case of *Houston E. & W. T. R. Co. v. United States, supra,* was then quoted as follows:

"This language is certainly sweeping enough to embrace all the discriminations of the sort described which it was within the power of Congress to condemn. There is no exception or qualification with respect to an unreasonable discrimination against interstate traffic produced by the relation of intrastate to interstate rates as maintained by the carrier. It is apparent from the legislative history of the act that the evil of discrimination was the principle thing aimed at, and there is no basis for the contention that Congress intended to exempt any discriminatory action or practice of interstate carriers affecting interstate commerce which it had authority to reach."

Subsequently in the same case upon rehearing *(Dimmitt-Caudle-Smith etc. Co. v. Chicago, Burlington & Q. R. Co.),* 51, I. C. C. 71, the Federal commission held

that the reasonable rule for the transportation of care-takers accompanying one-car shipments of live stock from Missouri points to East St. Louis and National Stock Yards, Illinois, would be to provide for their free transportation to market only.

In *Sioux City Live Stock Exchange v. Chicago & N. W. R. Co.*, 53 I. C. C. 166, the Federal commission cited the cases above referred to, and stated that they found that the application of a different rule governing the transportation of caretakers in connection with their intrastate rates than in connection with interstate rates resulted in undue prejudice to the interstate points. The same rule was also applied in *South St. Joseph Live Stock Exchange v. Chicago, Burlington & Q. R. Co.*, 53 I. C. C. 114. Thus it is seen that the Federal government has assumed and is exercising control of the matter as affecting interstate commerce.

It is shown without dispute in this case that the present interstate commerce rule in effect is that, upon one-car shipments of live stock, while the caretaker is allowed his transportation but one way, that is, to destination of the live stock, on two or more cars of live stock the caretaker is furnished transportation both ways. One caretaker is allowed for every five or six cars in one shipment. Thus the prevailing interstate rule now in force is such that, if one ships one car of live stock from some Idaho point to Spokane, Seattle or Portland, he is allowed transportation for the caretaker but one way, and on two or more cars, both ways. It is thus manifest that the order of the department is in contravention of the prevailing rule under the interstate commerce regulations and tariffs.

The department justifies its order largely on the ground that there is in force in the state of Oregon a provision requiring that half return fare be provided

for caretakers with single car shipments of live stock, and that unless such regulation be made in this state there is a discrimination in favor of shippers in Oregon. It is intimated that the regulation in Oregon is to be tested under the interstate commerce laws. The fact that Oregon may have for the present a regulation discriminatory to interstate commerce, and is in fact prejudicial to shippers in Washington, does not justify the regulation. That should be corrected by the removal of the Oregon discrimination, if such it be. However, it is also suggested that a difference in conditions exists in Oregon and Washington from the conditions existing in the middle west, where the cases above cited arose.

In case it be finally decided by the Federal authorities that there is such difference in conditions that it justifies a difference in state regulation from the interstate regulations in force in this region, then the departmental order may be restored.

Under the law, as it has been announced by the Federal authorities which have dominant control over the matter involved, even though it be only incidentally involved, we are forced to the conclusion that the departmental order, and the order affirming the same by the superior court, are wrong and must be reversed. They will be reversed, however, without prejudice to the authority of the department to restore the order upon and if it be finally determined by the Federal authorities that the Oregon regulation is not prejudicial to interstate commerce. If the regulation be freed from that objection, such order is reasonable and removes discrimination in favor of shippers to Oregon points, and against one-car shippers of live stock in this state, and other discriminations due to the differ-

ence between our state and the Federal laws regarding livestock shipments.

Reversed and remanded.

MAIN, C. J., MITCHELL, MACKINTOSH, and BRIDGES, JJ., concur.